UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BETTER BAGS, INC., § | | |
| § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | CIVIL ACTION H-10-608 | |
| § | | |
| CONTINENTAL POLY BAGS, INC. AND § | | |
| GEORGE X. ZHANG, § | | |
| § | | |
| *Defendants*. § | | |

**ORDER**

Plaintiff Better Bags, Inc. ("Better Bags") brought this patent infringement action against defendants Continental Poly Bags, Inc. ("Continental") and George X. Zhang (collectively, "Defendants"), alleging that Continental is making, using, and selling dispensing assemblies for plastic bags that infringe upon a patent owned by Better Bags, United States Patent No. 5,732,833 (the "833 Patent"). Zhang is the president of Continental. Defendants deny that the dispenser Continental makes, uses, and sells infringes upon the patent.

The parties disagree as to how various terms in the 833 Patent should be construed. The parties fully briefed the issues, and the court held a hearing on February 17, 2011, during which the parties presented their arguments in support of their proposed constructions. This order, in accordance with first step of an infringement analysis outlined in *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996), construes the disputed claim terms as a matter of law.

**I. LEGAL STANDARD**

A "court has the power and obligation to construe as a matter of law the meaning of language used in the patent claim." *Markman*, 52 F.3d at 979. "As such, '[a] patent covers the invention or

inventions which the court, in construing its provisions, decides that it describes and claims.'" *Id.* (alteration in original) (quoting 3 William C. Robinson, *The Law of Patents for Useful Inventions* § 1019, at 247 (1890)). "'To ascertain the meaning of claims, [courts] consider three sources: The claims, the specification, and the prosecution history.'" *Id.* (quoting *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed. Cir. 1991)). Courts first "look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Words "in a claim are generally given their ordinary meaning." *Id.*

After reviewing the claims, courts must examine the specification because a patentee "may use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." *Id.* "The specification contains a written description of the invention that must enable one of ordinary skill in the art to make and use the invention. For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. . . . Any special definition given to a word must be clearly defined in the specification." *Markman*, 52 F.3d at 979-80. Claims, therefore, "must be read in view of the specification, of which they are a part." *Id.* at 979. The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp.*, 90 F.3d at 1582. Even so, while "the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988).

Next, courts consider the prosecution history of a patent, if it is in evidence. *Id.* The history contains the representations the applicant made to the Patent and Trademark Office regarding the scope of the claims. *Id.* Thus, "the record before the Patent and Trademark Office is often of critical significance in determining the meaning of claims." *Id.*

While the analysis includes consideration of the specification and, if in evidence, the prosecution history, the analysis "begins and ends in all cases with the actual words of the claim." *Renishaw P.L.C. v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[A] court must presume that the terms in the claim mean what they say, and, unless otherwise compelled, give full effect to the ordinary and accustomed meaning of claim terms." *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1370 (Fed. Cir. 2002). "In analyzing the intrinsic evidence, [courts] start with the language of the claims and engage in a 'heavy presumption' that claim terms carry their ordinary meaning as viewed by one of ordinary skill in the art." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003).

In "most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term." *Constant*, 848 F.2d at 1583. If this is the case, then "it is improper to rely on extrinsic evidence." *Id.* However, courts may review extrinsic evidence "to assist them in comprehending the technology in accordance with the understanding of skilled artisans and as necessary for actual claim construction." *Altiris, Inc.*, 318 F.3d at 1369. "Extrinsic evidence may never be relied upon, however, to vary or contradict the clear meaning of terms in the claims." *Id.* (citing *Markman*, 52 F.3d at 981).

## II. ANALYSIS

The 833 Patent, as a whole, relates to dispensers for the type of plastic bags that one finds in the fresh vegetable section of the grocery store. The 833 patent originally had thirteen separate claims. However, only six claims survive: Claims 1-4, and 8-9. Dkt. 7. Claims 3 and 4 are at issue in this case. Dkt. 8. Better Bags contends that the plastic bags on a header sold by Continental infringe on these claims. *Id.* Defendants claim that the 833 Patent "is for a dispensing assembly and not for plastic bags." Dkt. 20. Specifically, Defendants claim that the purpose of the invention was to create a dispenser with a special shaped hook because the plastic bags would often fall off of the prior art dispensers. *Id.* Patent 833's specification contains detailed descriptions of such dispensing assemblies and support hooks, as well as the headers that go on them. *See* Dkt. 19, Exh. A.

Given these differing views on the general scope of the patent, Better Bags and Defendants disagree regarding how several of the terms in Claim 3 and Claim 4 should be construed. In claims 3 and 4 of the 833 patent, the inventor claimed:

> 3. *A dispensing assembly for dispensing plastic bags* of the type stacked onto one another and having a lower bag portion and a disposable upper portion, the dispensing assembly having *a plurality of support hooks for supporting the stack of plastic bags*, wherein the improvement comprises:
> > a header connected to the disposable upper portion of the stack of plastic bags, said header is made from a substantially rectangular piece of plastic having *a handle formed from a generally central area* of said substantially rectangular piece with *said substantially rectangular piece folded longitudinally*, said header having a continuous front flange and a continuous back flange along the length of said header, said header including a *pair of upper tabs*, each said upper tab having a hole therethrough for hanging the stack of plastic bags.
>
> 4. The dispensing assembly of claim 3, wherein said header has *an elongate opening through said handle for hanging the stack of plastic bags*.

Dkt. 1, Exh. A (emphasis of disputed terms added). Defendants argue that six terms[1] in these claims need construction and that the "words of the claims should be given their ordinary meaning as specifically taught in the '833 patent." Dkt. 20. Better Bags claims that the court and a person of ordinary skill in the art could readily understand the 833 Patent claims as they are written and that no construction of the terms identified by Defendants is necessary. Dkt. 19. Better Bags proposes alternative constructions for some of the terms based on dictionary definitions. *Id.* Defendants claim that the "constructions proposed by Better Bags attempt to broaden the claim language well beyond the claim limitations so as to make the claim limitless and therefore meaningless." Dkt. 20.

The court will address each disputed term *seriatim*.

### A. *"A Dispensing Assembly for Dispensing Plastic Bags"*

The first disputed term, which is contained within Claim 3, is "a dispensing assembly for dispensing plastic bags." Defendants contend that this term should be limited to the dispensing assemblies described in the specification. Defendants claim that the court may limit the claim in this way because the term "dispensing assembly for dispensing plastic bags" recites a function rather than a structure and may therefore be limited by the "means-plus-function" limitation contemplated by 35 U.S.C. § 112 ¶ 6. Better Bags asserts that the claim should not be so limited because it recites a structure. Additionally, Better Bags argues that the claim is in the Jepson format, and that the term, which is contained within the preamble of the claim, encompasses all dispensers for dispensing

---

[1] Defendants' briefing contained proposed construction for seven disputed terms, but the parties reached agreement on one of the disputed terms during the hearing.

plastic bags that were conventional or known at the time of the invention, not just the dispensers discussed in the specification.[2]

### 1. *Means-Plus-Function*

Defendants argue that the court should limit the construction of the term "dispensing assembly for dispensing plastic bags" to the assemblies contained within the specification or within Claims 1 and 2 because the term recites a function, not a structure. Defendants propose that the court construe the term as follows: "the 'dispensing assembly for dispensing plastic bags' does not include the plastic bags which are dispensed nor the header or the stack of plastic bags, it includes only the recited plurality of support hooks." Better Bags argues that the term clearly recites a structure and should not be limited to the assemblies in the specification or the first two claims.

Whether a limitation should be regarded as a means-plus-function limitation is a question of law. *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004). Paragraph 6 of 35 U.S.C. § 112 states:

> An element in a claim for a combination may be expressed as a **means or step for performing a specified function** *without the recital of structure*, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112 ¶ 6 (emphasis added). "A means-plus-function limitation contemplated by 35 U.S.C. § 112 ¶ 6 (1994) recites a function to be performed rather than definite structure or materials for performing that function. Such a limitation must be construed 'to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.'" *Chiuminatta*

---

[2] Better Bags proposes alternative constructions for this and other disputed claim terms, should the court not accept its arguments that no construction is needed for these claim terms. The court did not find it necessary to reach Better Bags' alternative proposals, as the court agrees that no construction is needed for each claim term that remains in dispute.

*Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-08 (Fed. Cir. 1998). Paragraph 6 is invoked only if the claim does not recite a definite structure. Patent drafters conventionally were able to invoke the statute "by using only the words 'means for' followed by a recitation of the function to be performed." *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996). The "'means' term in a means-plus-function limitation is essentially a generic reference for the corresponding structure disclosed in the specification. Accordingly, a determination of corresponding structure is a determination of the meaning of the 'means' term in the claim and is thus also a matter of claim construction." *Chiuminatta*, 145 F.3d at 1308.

If there is no use of the word "means" in the claim, then there is a presumption against the "means-plus-function" limitation. *Watts v. XL Sys., Inc.*, 232 F.3d 877, 881 (Fed. Cir. 2000). In "determining whether the presumption is rebutted, 'the focus remains on whether the claim . . . recites sufficiently definite structure.'" *Id.* (quoting *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 704 (Fed. Cir. 1998)). The claims does not, however, have to "connote a precise physical structure." *Personalized Media Commc'ns*, 161 F.3d at 705. "As an aid in determining whether sufficient structure is in fact recited by a term used in a claim limitation, [the Federal Circuit] has inquired into whether the 'term, as the name for structure, has a reasonably well understood meaning in the art.'" *Watts*, 232 F.3d at 880-81 (quoting *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996)).

For example, in *Mas-Hamilton Group v. La Gard, Inc.*, 156 F.3d 1206 (Fed. Cir. 1998), the Federal Circuit considered whether a claim for a "substantially non-resilient lever moving element for moving the lever from its disengaged position for engaging the protrusion of the lever with the cam surface on the cam wheel so that the rotation of the cam wheel thereafter in the given direction

changes the locking mechanism from the locked condition to the unlocked condition" invoked Paragraph 6. 156 F.3d at 1213. The court determined that the "lever moving element" did not have a generally understood structural meaning in the relevant lock art. *Id.* at 1214. Rather, the term was described in terms of its function, not its mechanical structure. *Id.* Moreover, if the specification were not consulted, then the term "moving element" "could be any device that can cause a lever to move," as there was no structure recited. *Id.* The Federal Circuit therefore affirmed the district court, which applied § 112 ¶ 6 to limit the construction of "lever moving element" to those structures disclosed in the specification. *Id.*

Here, since the claim does not contain the word "means," there is a strong presumption against the "means-plus-function" construction. *See Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004) (The "presumption flowing from the absence of the term 'means' is a strong one that is not readily overcome."). The court must determine whether the term recites sufficient structure to avoid the application of § 112 ¶ 6. A term may recite a sufficient structure to avoid application of § 112 ¶ 6 even if the term does not "denote a specific structure"; "it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function." *Id.* at 1359-60. Here, unlike the "lever moving element" in *Mas-Hamilton Group* that "could be any device that can cause a lever to move," the term "dispensing assembly for dispensing plastic bags" refers to a specific type of structure that is known in common parlance. Thus, Defendants have not overcome the presumption against the "means-plus-function" limitation, and it is therefore inappropriate to impose the limitation proposed by Defendants.

8

*2.     "Jepson" Format*

Better Bags argues that no construction of the term "dispensing assembly for dispensing plastic bags" is necessary because Claim 3 is in the "Jepson" format. Dkt. 23. The Jepson format is outlined in 37 C.F.R. § 1.75(e):

> Where the nature of the case admits, as in the case of an improvement, any independent claim should contain in the following order:
> (1) A preamble comprising a general description of all the elements or steps of the claimed combination which are conventional or known,
> (2) A phrase such as "wherein the improvement comprises," and
> (3) Those elements, steps and/or relationships which constitute that portion of the claimed combination which the applicant considers as the new or improved portion.

37 C.F.R. § 1.75(e). The "preamble elements in a Jepson-type claim are [i]mpliedly admitted to be old in the art." *Application of Ehrreich*, 590 F.2d 902, 909 (Fed. Cir. 1979). "When this form is employed, the claim preamble defines not only the context of the claimed invention, but also its scope." *Rowe v. Dror*, 112 F.3d 473, 479 (Fed. Cir. 1997). The use of this form evidences an "intention to use the preamble to define, in part, the structural elements of [the inventor's] claimed invention." *Id.*

During the hearing, Defendants argued that Claim 3 is not a Jepson claim because the inventor is simply talking about the dispensing assemblies from Claims 1 and 2 because, if he were not, then the inventions in Claims 1 and 2 would be dispensing assemblies with no purpose. Defendants argued that Claim 3 provides the purpose for the assemblies described in Claims 1 and 2. Defendants additionally argued that Claim 3 is not a Jepson claim because, even though the text after the preamble describes a header, it is the dispensing assembly and not the header that is the improvement. Defendants argued that the claim was confusing and that the court should therefore consult the specification to determine what it is that the inventor invented.

9

The court, however, does not find Claim 3 confusing. It is clearly in the Jepson format. The term "dispensing assembly for dispensing plastic bags" is in the preamble to Claim 3. The preamble ends with the term "wherein the improvement comprises," and the claim then describes *one* of the inventor's improvements to the prior art dispensing assemblies—a specific type of header. There would be no need for the inventor to go into the detail he did about the header if it was not part of his invention. Nor would the inventor have described the header right after stating "wherein the improvement comprises," if it were part of his invention. The disputed term is therefore used to describe those dispensing assemblies for dispensing plastic bags that were conventional or known prior to this invention, and it is inappropriate to limit the term "dispensing assemblies for dispensing plastic bags" to only those assemblies described in the specification or in Claims 1 and 2.

Moreover, the court finds Defendants' argument that the dispensing assembly discussed in Claim 3 must be limited to the dispensing assemblies described in Claims 1 and 2 unavailing. There is no reason that the improvement to the dispensing assembly in Claim 3 could not be used on both prior art dispensing assemblies *and* the type of assemblies described in Claims 1 and 2. The assemblies described in Claims 1 and 2 are not rendered meaningless just because the headers described in Claim 3 may be used on the dispensers known in prior art as well. Moreover, in six of the thirteen original claims, the inventor specifically limits the dispensing assemblies to "the dispensing assembly of claim [3, 7, 8, 10, or 12]" at the beginning of the claims. The inventor would have used the same limiting language in Claim 3 had he meant to limit the dispensing assembly to the dispensing assemblies described in Claims 1 and 2.

Because the term "dispensing assembly for dispensing plastic bags" recites a structure and because the term is contained within the preamble of a claim written in the Jepson format, the court

finds the limitation proposed by Defendants to be inappropriate. No construction of this term is warranted.

### B. "A plurality of support hooks for supporting the stack of plastic bags"

The next disputed term is "a plurality of support hooks for supporting the stack of plastic bags." Better Bags argues that the term is a commonly used term and that its meaning is clear on its face. Dkt. 19. Defendants argue that this term recites function and invokes § 12 ¶ 6, and they urge the court to adopt the following construction:

> The specific support function of the plurality of support hooks is described, illustrated and emphasized in the specification for example at column 4, lines 44 and 59 in the Figures as reference number 18.
> The hooks have an upper horizontal segment, an inclined segment and an attachment segment.
> A plurality means two hooks equally spaced apart from the center. The specification has only one embodiment with a plurality of hooks for supporting the stack of plastic bags.

Dkt. 20. Because Defendants claim this is a "means-plus-function" term, they look to the description of the prior art to argue that the shape of the hook is critical to the invention, which indicates that the prior "'supporting member or members have typically been substantially straight, horizontal members or members shaped in a generally vertical, circular manner.'" Dkt. 22 (quoting a portion of the "Description of Prior Art" section of the 833 Patent). The description of the prior art goes on to discuss why these shapes did not work. *Id.* Defendants argue that the shape of the hook in the patented invention is critical, yet there is no structure recited in connection with "hooks for supporting." *Id.* Additionally, during the hearing Defendants argued that the specification needed to be consulted to determine what the structure is because as written the hooks could be straight hooks, curved hooks, tall hooks, or short hooks, yet, in Defendants' view, the invention is limited to inclined hooks.

11

The court finds that the term "a plurality of support hooks for supporting the stack of plastic bags" recites a structure and that the "means-plus-function" limitation is not warranted. Even though the term "does not bring to mind a particular structure," because the word "hooks," used in isolation, could refer to numerous different types of hooks, "that point is not dispositive. What is important is whether the term is one that is understood to describe a structure, as opposed to a term that is simply a nonce word or verbal construct that is not recognized as the name of a structure and is simply a substitute for the terms 'means for.'" *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1360 (Fed. Cir. 2004). The term "hooks" has "a reasonably well-understood meaning as a name for a structure." *Id.* (finding that the dictionary definition for the term "connector" had "a reasonably well-understood meaning as a name for a structure, even though the structure is defined in terms of the function it performs"). Defendants therefore fail to overcome the strong presumption against the means-plus limitation.

Moreover, Better Bags argues that there is no indication in the specification that the patentee intended to limit the scope of his claims to the particular embodiments. Dkt. 19. Better Bags points to the following statement from the specification: "disclosure and description of the invention is illustrative and explanatory thereof, and various changes in the size, shape, and materials, as well as in the details of illustrative construction and assembly, may be made without departing from the spirit of the invention." *Id.* at 11 (quoting Exh. A at column 8: lines 12-16). The court agrees. A means-plus-function limitation is inappropriate with regard to this phrase.

Better Bags also argues that this claim term is used in the preamble of Claim 3 and that Claim 3 is in the Jepson format. Thus, the phrase is part of the description of what is conventional or

known. As noted above, the court agrees that the claim is in the Jepson format. The phrase therefore describes what is conventional or known, and no construction is needed.

## C. "A Handle Formed from a Generally Central Area"

The third disputed term is "a handle formed from a generally central area." Better Bags contends that this term is a commonly used phrase and its meaning is clear on its face. Dkt. 19. Defendants argue that the term needs to be construed, and they urge the court to adopt the following construction: "a[n] extension extending up from the central area of the header so as to form a handle. The handle cannot extend the length of the header." Defendants claim that this proposal recites the handle "that is in the claim, in the specification and therefore in the patent." Dkt. 20. The court finds that the term has a generally understood meaning and that Defendants have not overcome the "'heavy presumption' that claim terms carry their ordinary meaning as viewed by one of ordinary skill in the art."[3] *Altiris, Inc.*, 318 F.3d at 1369. Thus, no construction is needed.

## D. "Rectangular Piece Folded Longitudinally"

The next disputed term in Claim 3 is "said substantially rectangular piece folded longitudinally." Defendants propose the following construction: "the rectangular piece is folded in half bringing its two longest edges together and forming a double fold in its middle." Dkt. 20. They claim that this construction recites the rectangle that is "in the claim, in the specification, and therefore in the patent." *Id.* Better Bags states that the term is a commonly used phrase and that its meaning is clear on its face. Dkt. 19. The court finds that there is no need to construe this claim

---

[3] There was no testimony from experts at the hearing, but the parties agree that the "technology involved is very simple . . . and does not require a technical expert to address pretrial and post trial matters." Dkt. 18. Therefore, in this case, the court finds that one "skilled in the art" is one who understands the operation of dispensers of plastic bags at the grocery store.

term, as any person with a rudimentary understanding of geometry could determine its meaning, and it can be easily understood by one skilled in the art.

### E. "Flange"

Better Bags and Defendants each submitted proposals for the construction of the following claim term: "a continuous front flange and a continuous back flange." *See* Dkts. 19, 20. During the hearing, both parties agreed to the following construction, which was proposed by Better Bags: "a continuous front projection used for strength or for attaching to another object and a continuous back projection used for strength or for attaching to another object." Since the parties have agreed to this construction, the court adopts said construction.

### F. "A Pair of Upper Tabs"

The next disputed term is "a pair of upper tabs." Again, Better Bags claims that this is a commonly used phrase that is clear on its face. Dkt. 19. Defendants, on the other hand, propose the following: "two separate small extensions, extending vertically on both sides of and spaced apart from the central area of the header, forming hanging tabs. The tabs are separate from the handle." Dkt. 20. Defendants argue that this description recites the tabs as found in the claim and specification and therefore the patent. *Id.* The court finds that the term "pair of upper tabs" is clear on its face and that no construction is needed.

### G. "An Elongate Opening Through Said Handle for Hanging the Stack of Plastic Bags"

The next disputed term is "an elongate opening through said handle for hanging the stack of plastic bags," which is used in Claim 4. Better Bags again claims that this is a commonly used phrase that does not need construction. Dkt. 19. Defendants request that this term be construed as follows: "an opening in the handle for hanging the header on a wide hook. The opening must be

sufficiently elongated to cooperate with a central support hook to provide lateral stability." Dkt. 20. Defendants again argue that their construction recites the opening that is in the claim and specification and therefore in the patent. *Id.* Defendants also argue that the "inventor recites that his 'new' hook works with prior art elongated openings that cooperate with the hook." *Id.* Better Bags claims that Defendants' construction is confusing and imposes limitations that would result in the impermissible confinement of the claims to particular embodiments and examples appearing in the specifications. Dkt. 19. The court finds that this term is clear and needs no construction.

## IV. CONCLUSION

The court finds that the following claim terms are clear and need no construction: "a dispensing assembly for dispensing plastic bags"; "a plurality of support hooks for supporting the stack of plastic bags"; "a handle formed from a generally central area"; "said substantially rectangular piece folded longitudinally"; "a pair of upper tabs"; and "an elongate opening through said handle for hanging the stack of plastic bags." The court adopts the following construction of the term "a continuous front flange and a continuous back flange," which was agreed upon by the parties during the hearing: "a continuous front projection used for strength or for attaching to another object and a continuous back projection used for strength or for attaching to another object."

It is so ORDERED.

Signed at Houston, Texas on May 23, 2011.

_____
Gray H. Miller
United States District Judge